IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2013 Term

**FILED**

**May 20, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 12-0046

IN RE GRANDPARENT VISITATION OF A.P.

Appeal from the Circuit Court of Hancock County
The Honorable James P. Mazzone, Judge
Civil Action No. 10-D-161

REVERSED AND REMANDED WITH DIRECTIONS

Submitted: April 10, 2013
Filed: May 20, 2013

Joshua Fraenkel, Esq.
Bruce Perrone, Esq.
Legal Aid of West Virginia
Wheeling, West Virginia
Attorneys for Petitioner

Lawrence Manypenny, Esq.
Manypenny & Carey
New Cumberland, West Virginia
Attorney for Respondent

The Opinion of the Court was delivered PER CURIAM.

1. "In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*." Syllabus, *Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004).

2. "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995).

3. "The Grandparent Visitation Act, *W.Va.Code* § 48–10–101 *et seq.* [2001], is the exclusive means through which a grandparent may seek visitation with a grandchild." Syl. Pt. 1, *In re Hunter H.*, No. 12-0173, ___ W.Va. ___, ___ S.E.2d ___, 2013 WL 1113367 (W.Va. filed March 14, 2013).

4. "The best interests of the child are expressly incorporated into the Grandparent Visitation Act in *W.Va. Code* §§ 48-10-101, 48-10-501, and 48-10-502 [2001]."

Syl. Pt. 2, *In re Hunter H.*, No. 12-0173, ___ W.Va. ___, ___ S.E.2d ___, 2013 WL 1113367 (W.Va. filed March 14, 2013).

5. "A trial court, in considering a petition of a grandparent for visitation rights with a grandchild or grandchildren pursuant to W.Va. Code, 48-2-15(b)(1) [1986] or W.Va. Code, 48-2B-1 [1980], shall give paramount consideration to the best interests of the grandchild or grandchildren involved." Syl. Pt. 1, *In re Nearhoof*, 178 W.Va. 359, 359 S.E.2d 587 (1987).

Per Curiam:

This is an appeal by J.P. (hereinafter "the petitioner")[1] from a final order of the

Circuit Court of Hancock County, West Virginia, awarding grandparent visitation to S.R.

(hereinafter "the respondent"). The petitioner contends that the circuit court erred in

awarding grandparent visitation rights to the respondent. Upon thorough review of the

appendix record, briefs, arguments of counsel, and applicable precedent, this Court reverses

the decision of the lower court and remands this matter for entry of an order denying

grandparent visitation rights to the respondent.

## I. Factual and Procedural History

The petitioner's daughter, A.P., was born on May 8, 2009.[2] For the first two

and one-half months of A.P.'s life, she and the petitioner lived with the petitioner's mother,

the respondent S.R. During that portion of A.P.'s infancy, the respondent interacted with

A.P. on a daily basis and provided extensive childcare.[3] On July 23, 2009, the petitioner and

the child moved out of the respondent's home, and the child and the respondent continued

---

[1] Due to the sensitive nature of this case, this Court uses only the initials of the affected parties. *See In re D.P.*, 230 W.Va. 254, 737 S.E.2d 282 (2012).

[2] The petitioner is unmarried. The record indicates that the child's father lives in Florida and has minimal contact with the child, with no court-ordered visitation.

[3] The respondent was employed as a teacher; thus, she was able to provide childcare to A.P. during her vacation time in the summer of 2009.

1

to have several visits per week and multiple overnight visits between July 2009 and December 2009. The relationship between the petitioner and the respondent deteriorated by December 2009, and visitation gradually decreased thereafter. In April 2010, the petitioner prohibited further visitation between the child and the respondent.

The respondent filed a petition for grandparent visitation on June 23, 2010. Subsequent to a hearing, the family court directed the petitioner and the respondent to meet for lunch on certain days each month. The family court held another hearing on January 25, 2011, and entered an August 4, 2011, order awarding grandparent visitation to S.R. In that order, the family court found that the respondent had been a significant caretaker for the first several months of the child's life and had formed a bond with the child. Further, the family court found that the best interests of the child would be served by a continuation of the relationship with the respondent. The family court ordered visitation as follows: once a month for five hours; a period of time on Easter weekend; four hours of visitation the day before Thanksgiving; four hours every December 23; and three hours near the child's birthday.

The family court, acknowledging concerns the petitioner had raised regarding the respondent's negativity and general disparaging comments,[4] ordered the respondent to refrain from making any negative comments within the hearing distance of the child. The family court also held that the petitioner had the right to be present during all periods of visitation. The petitioner appealed that family court's decision to the circuit court, which affirmed the family court's order on December 6, 2011. The petitioner now appeals to this Court.

## II. Standard of Review

This Court's standard of review for appeals arising from family court decisions is as follows:

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

Syllabus, *Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004). In syllabus point one of *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995), this Court also

---

[4]The family court noted that the petitioner and the respondent disagreed over the petitioner's significant other and that the respondent had made disparaging comments in the presence of the child. In weighing the opposing interests, the family court observed that the respondent had spent every day with the child while the petitioner and the child resided with the respondent. The family court also noted that family members had testified that the respondent had formed a bond with the child and had provided significant childcare.

3

stated that "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."

## III. Discussion

This Court has specified that "[t]he Grandparent Visitation Act, W.Va. Code § 48-10-101 et seq. [2001], is the exclusive means through which a grandparent may seek visitation with a grandchild." Syl. Pt. 1, *In re Hunter H*., No. 12-0173 ___ W.Va. ___, ___ S.E.2d ___, 2013 WL 1113367 (W.Va. filed March 14, 2013). In syllabus point two of *Hunter*, this Court held that "[t]he best interests of the child are expressly incorporated into the Grandparent Visitation Act in W.Va. Code §§ 48-10-101, 48-10-501, and 48-10-502 [2001]." Moreover, this Court has explained that paramount consideration shall be accorded to the best interests of the child in an analysis of a grandparent visitation request. This Court identified that concern in syllabus point one of *Petition of Nearhoof*, 178 W.Va. 359, 359 S.E.2d 587 (1987), as follows: "A trial court, in considering a petition of a grandparent for visitation rights with a grandchild or grandchildren pursuant to W.Va. Code, 48-2-15(b)(1) [1986] or W.Va. Code, 48-2B-1 [1980], shall give paramount consideration to the best interests of the grandchild or grandchildren involved."

The statutory foundation for evaluation of grandparent visitation petitions is enunciated in West Virginia Code § 48-10-501 (2009). That statute provides that "[t]he

4

circuit court shall grant reasonable visitation to a grandparent upon a finding that visitation would be in the best interests of the child and would not substantially interfere with the parent-child relationship." Factors to be considered in making a decision regarding grandparent visitation are listed in West Virginia Code § 48-10-502 (2009), as follows:

> (1) The age of the child;
>
> (2) The relationship between the child and the grandparent;
>
> (3) The relationship between each of the child's parents or the person with whom the child is residing and the grandparent;
>
> (4) The time which has elapsed since the child last had contact with the grandparent;
>
> (5) The effect that such visitation will have on the relationship between the child and the child's parents or the person with whom the child is residing;
>
> (6) If the parents are divorced or separated, the custody and visitation arrangement which exists between the parents with regard to the child;
>
> (7) The time available to the child and his or her parents, giving consideration to such matters as each parent's employment schedule, the child's schedule for home, school and community activities, and the child's and parents' holiday and vacation schedule;
>
> (8) The good faith of the grandparent in filing the motion or petition;
>
> (9) Any history of physical, emotional or sexual abuse or neglect being performed, procured, assisted or condoned by the grandparent;

(10) Whether the child has, in the past, resided with the grandparent for a significant period or periods of time, with or without the child's parent or parents;

(11) Whether the grandparent has, in the past, been a significant caretaker for the child, regardless of whether the child resided inside or outside of the grandparent's residence;

(12) The preference of the parents with regard to the requested visitation; and

(13) Any other factor relevant to the best interests of the child.

West Virginia Code § 48-10-702(b) (2009) creates a rebuttable presumption that a grandparent, filing a petition pursuant to West Virginia Code § 48-10-402 (2009),[5] is not entitled to court-ordered visitation privileges where the parent through whom the grandparent is related to the grandchild has custody of the child. Specifically, West Virginia Code § 48-10-702(b) provides as follows:

> If a petition is filed pursuant to section 10-402 [§ 48-10-402], there is a presumption that visitation privileges need not be extended to the grandparent if the parent through whom the grandparent is related to the grandchild has custody of the child, shares custody of the child, or exercises visitation privileges with the child that would allow participation in the visitation by the grandparent if the parent so chose. This presumption may be rebutted by clear and convincing evidence that an award of grandparent visitation is in the best interest of the child.

---

[5]West Virginia Code § 48-10-402 applies, as in the present case, when a proceeding for divorce, custody, legal separation, annulment, or establishment of paternity is not pending.

6

In reconciling the valid competing interests ensconced within a grandparent visitation determination, significant weight must be accorded to a fit parent's wishes. This principle is encompassed within West Virginia Code § 48-10-702(b), as quoted above, and is premised upon the recognition that a fit parent having custody of a child possesses distinct rights regarding the selection of individuals with whom that child may be affiliated. This principle was the determining factor in *Troxel v. Granville*, 530 U.S. 57 (2000), in which the United States Supreme Court held that a Wisconsin state statute violated the substantive due process rights[6] of a parent by allowing visitation rights, over parental objection, even where such visitation served the best interests of the child. *Id.* at 61. The Supreme Court held that the Washington statute unconstitutionally infringed upon a parent's rights by failing to accord appropriate deference to "a parent's decision that visitation would not be in the child's best interest." *Id.* at 67. The *Troxel* Court further explained that

> so long as a parent adequately cares for his or her children (i.e. is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children.

---

[6]The *Troxel* Court stated that "[t]he liberty interest at issue in this case - the interest of parents in the care, custody and control of their children - is perhaps the oldest of the fundamental liberty interests recognized by this Court." 530 U.S. at 65.

7

*Id.* at 68-69.  The *Troxel* Court, with Justice O'Connor writing for the plurality, held that

some "special weight"[7] must be accorded to the parents' wishes concerning visitation,

reasoning as follows:

> In an ideal world, parents might always seek to cultivate the
> bonds between grandparents and their grandchildren.  Needless
> to say, however, our world is far from perfect, and in it the
> decision whether such an intergenerational relationship would
> be beneficial in any specific case is for the parent to make in the
> first instance.  And, if a fit parent's decision of the kind at issue
> here becomes subject to judicial review, the court must accord
> at least some special weight to the parent's own determination.

*Id.* at 70.


In discussing the rationale of *Troxel,* this Court has observed that the Supreme

Court "instructs that a judicial determination regarding whether grandparent visitation rights

are appropriate may not be premised solely on the best interests of the child analysis." *Cathy

L.M. v. Mark Brent R.,* 217 W.Va. 319, 327-28, 617 S.E.2d 866, 874-75 (2005)  Rather, the

evaluating court "must also consider and give significant weight to the parents' preference,

---

[7]Although *Troxel* does not define "special weight," state courts attempting to interpret and apply *Troxel* have reasoned that "special weight" indicates considerable deference.  In *In re M.W.*, 292 P.3d 1158 (Colo. App. 2012), for instance, the Colorado Court of Appeals explained that "[g]iving special weight means that the presumption favoring the parent's decision can be rebutted only by clear and convincing evidence that granting parental responsibilities to the nonparent is in the child's best interests." *Id.* at 1161.  Interestingly, that is the same standard statutorily mandated by this state in West Virginia Code § 48-10-702(b).  As the Court of Appeals of Wisconsin aptly noted, creating such a rebuttable presumption is "the legal means" of according special weight to the parent's wishes.  *In re Nicholas L.*, 731 N.W.2d 288, 293 (Wis. Ct. App. 2007).

8

thus precluding a court from intervening in a fit parent's decision making on a best interests basis." *Id.*

In *State ex rel. Brandon L. v. Moats*, 209 W.Va. 752, 551 S.E.2d 674 (2001), this Court indicated that it was not identifying "the amount of weight that should attach to the factor of parental preference. . . ." *Id*. at 763, 551 S.E.2d at 685. The *Brandon* Court noted, however, that "in light of the *Troxel* decision it is clear that 'the court must accord at least some special weight to the parent's own determination' provided that the parent has not been shown to be unfit." *Id.* (quoting *Troxel*, 530 U.S. at 70).

In the present case, the petitioner contends that the family court and circuit court erred in failing to properly consider specific statutorily-prescribed factors relevant to this case, including the young age[8] of the child; the significance of the limited time the child lived with the respondent; and the extent of the child's relationship[9] with the respondent. The petitioner further asserts that the lower tribunals erred by finding that the respondent had

---

[8]*See Cathy L.M.* 217 W.Va. at 326, 617 S.E.2d at 873 (stating that "young age militates against the requested visitation").

[9]*See In re Alyssa W. and Sierra H.*, 217 W.Va. 707, 711, 619 S.E.2d 220, 224 (2005) (finding that "a close emotional bond generally takes several years to develop").

9

rebutted the statutory presumption against awarding visitation privileges and argues that

proper weight was not accorded to her wishes, as a fit parent.[10]

This Court has recognized that "[t]he profound benefits of a child's relationship

with grandparents have been deservedly acclaimed." *Cathy L.M.,* 217 W.Va. at 327, 617

S.E.2d at 874. In that vein, this Court explained as follows in *Nearhoof*:

> It is biological fact that grandparents are bound to their grandchildren by the unbreakable links of heredity. It is common human experience that the concern and interest grandparents take in the welfare of their grandchildren far exceeds anything explicable in purely biological terms. A very special relationship often arises and continues between grandparents and grandchildren. The tensions and conflicts which commonly mar relations between parents and children are often absent between those very same parents and their grandchildren. Visits with a grandparent are often a precious part of a child's experience and there are benefits which devolve upon the grandchild from the relationship with his grandparents which he cannot derive from any other relationship. Neither the Legislature nor this Court is blind to human truths which grandparents and grandchildren have always known.

178 W.Va. at 364, 359 S.E.2d at 592 (quoting *Mimkon v. Ford*, 66 N.J. 426, 332 A.2d 199,

204-05 (1975)).

Perhaps in recognition of these immeasurable benefits flowing from a

grandparent/grandchild relationship, the family court in the present case attempted to

---

[10]It is uncontested that the petitioner is a fit parent.

structure a schedule of visitation which would foster reconciliation between the petitioner and the respondent. These attempts were regrettably unsuccessful, and this Court is now presented with the question of whether the lower tribunals erred in analyzing the statutory factors, applying the statutory presumption against grandparent visitation, and according appropriate weight to the fervent wishes of the fit parent in this case. The petitioner testified extensively regarding her concerns that the respondent's negativity will have an adverse impact upon her daughter. She expressed her strong opposition to subjecting her child to those detrimental influences. While this Court acknowledges that a judicial tribunal cannot, with absolute certainly, assess the degree to which the petitioner's concerns may be unwarranted, the petitioner's status as a fit parent is uncontested, and her expressed preferences regarding visitation must consequently be accorded special weight in the determination of the appropriateness of court-ordered grandparent visitation.[11]

The respondent contends that the petitioner's wishes were given appropriate weight, according to the requirements of *Troxel*. She further contends that she successfully rebutted the statutory presumption against an award of grandparent visitation rights by presenting clear and convincing evidence that visitation was in the best interests of the child, based upon the substantial relationship she had developed with the child. Additionally, the

---

[11]"Despite the recognition of the importance of relationships between children and grandparents and continuity of relationships generally, the constitutional admonitions of *Troxel* must be observed." *Cathy L.M.,* 217 W.Va. at 327, 617 S.E.2d at 874.

11

respondent argues that the lower tribunals properly weighed the young age of the child and that such consideration was the basis for the court's decision to grant limited visitation to her.

This Court's resolution of the matter must be premised upon the directives of *Troxel*, the statutory presumption against grandparent visitation, and the factors enumerated for consideration in grandparent visitation matters. The mandates of *Troxel* require that the wishes of the petitioner, as a fit parent presumed capable of rational choices concerning the relationships to be enjoyed by her child, be accorded special weight.[12] As the Supreme Court stated in *Troxel*, there is "a presumption that fit parents act in the best interest of their children." 530 U.S. at 69.

Moreover, West Virginia Code § 48-10-702(b) creates a presumption against grandparent visitation under the circumstances of the present case, rebuttable only upon a

---

[12]This Court is mindful that conflicts do occasionally arise among family members. As the Supreme Court of Illinois concisely stated in *Wickham v. Byrne*, 769 N.E.2d 1 (Ill. 2002), however, "this human conflict has no place in the courtroom." *Id*. at 8. "Parents have the constitutionally protected latitude to raise their children as they decide, even if these decisions are perceived by some to be for arbitrary or wrong reasons." *Id.* This liberty interest "mandates that parents - not judges - should be the ones to decide with whom their children will and will not associate." *Id.* In this vein, we must acknowledge *Troxel's* admonition that "the Due Process Clause does not permit a State to infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a 'better' decision could be made." *Troxel*, 530 U.S. at 72-73. There is often a wide chasm between what a court might perceive as morally right and what the law permits that court to compel.

demonstration by clear and convincing evidence that visitation is in the best interests of the child. The best interests factor is also included in the factors enumerated in West Virginia Code § 48-10-502. The parties introduced evidence regarding the factors most relevant to this case. Those included the young age of the child; the relationship between the child and the respondent; the relationship between the petitioner and the respondent; the parental preference; the respondent's prior duties as a caretaker for the child; and the period of time the child and the petitioner resided with the respondent.

It is apparent that the young age of the child and the brevity of the period in which the child resided in the respondent's home militate against a finding that visitation is to be mandated. Although the petitioner and A.P. spent a significant portion of A.P.'s first year of life with the respondent, the petitioner moved out of the respondent's home when A.P. was two and one-half months old. The respondent and A.P. continued to maintain a substantial relationship until the petitioner decided to terminate further visitation privileges when the child was approximately eleven months old. The respondent presented testimony regarding the substantial relationship she had enjoyed with the child, including such things as general childcare, play, and reading. However, considering the statutory factors, the statutory presumption against grandparent visitation, and the requirements of *Troxel*, this Court concludes that the lower tribunals erred in finding that the respondent rebutted the

13

presumption by clear and convincing evidence that an award of grandparent visitation is in the best interest of the child

Based upon the foregoing, this Court reverses the order of the lower court and remands this matter for entry of an order denying grandparent visitation rights to the respondent.

Reversed and remanded, with directions.