No. 20-0037- In re Grandparent Visitation of L.M., A.M., E.M., J.M., B.M., and S.M.

**FILED**
**June 8, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

HUTCHISON, Justice, dissenting:

What disturbs me the most about this case—and the reason I dissent to the majority's decision—is that both the children's wishes and the recommendations of their therapists have been completely disregarded. At the final hearing in this matter, held on August 26, 2019, Mary Lilly, therapist for A.M. and E.M.; Brittany Henderson, therapist for J.M.; and Stephanie Trent, therapist for L.M. testified that the children did not desire to have visitation with their grandparents. According to the family court's final order, Ms. Lilly testified that there was no relationship between A.M and E.M and the grandparents and that court-ordered visitations would have a strong negative impact on A.M.'s relationship with his mother and a moderately negative impact on E.M.'s relationship with her mother. Ms. Lilly reported that progress had been made with the children during their counseling sessions, but court-ordered visitation would likely cause regression. Similarly, Ms. Henderson testified that court-ordered visitation would be harmful to J.M.'s mental and emotional health. She explained that J.M. has nightmares and separation anxiety that would likely increase with court-ordered visitation. Finally, Ms. Trent testified that L.M. disclosed during his last session with her that he was not receptive to visits with his grandparents at that time. Ms. Trent further testified that forced visitation could potentially cause L.M. to suffer depression.

1

All three therapists opined that forced visitation with the grandparents was not in the children's best interests. They also expressed concern that the grandparents might try to inform the children of what they believed "really happened to their Father." The therapists' concern was based on a letter written by the grandfather to the children early in the proceedings in this case. That letter read as follows:

> Hi kids I won't waste my time asking you to call, I know mom won't let you. [A.M.] and [J.M.] I don't know why you made up stories about your Father and Grandma and I.[1] I am sure you are being coached. [L.M.] I know you tell the truth and I think E.M. does. I know you loved your Father. *He was executed in cold blood, I saw it. And I believe you know the truth.* I may never get to see you kids. But remember I love you just like I love your Father, Uncle John and Aunt Kate.
>
> Love Grandpa

(Footnote and emphasis added). As the family court acknowledged in its order, the grandparents believe that the children's mother "in some way encouraged the death of their son." However, no evidence was ever presented to the court to support that belief.

---

[1]Three of the children, A.M., E.M., and J.M., reported to their therapists that the paternal grandparents were "mean" and "whipped them." Also, prior to the shootings, A.M. alleged that his father hit him. None of the allegations were substantiated. The oldest child, L.M., told a counselor that his siblings were making up the allegations and that anything that occurred was a form of discipline, not physical or emotional abuse.

The grandfather's letter was intercepted by the therapists and was never read to the children.[2] As the therapists explained in their treatment notes, reading statements to the children that their father was "executed in cold blood" and that they were being "coached" would be detrimental to their well-being and mental status. Other treatment notes of the therapists in the record indicate that one of the children expressed a desire to "blow up" the county where the shootings occurred and to "knife his grandparents."[3] Consequently, at the final hearing, the therapists expressed ethical and safety concerns should the court allow the grandparent visitation to occur. The therapists were so adamant that visitation was not in the children's best interests that they advised the court that they might elect to withdraw from the case should the grandparents' petition be granted.

Given this evidence, I simply do not understand how any court could conclude that it is in these children's best interests to have visitation with their grandparents. Yet, not only did the family court reach that conclusion, it further found that the visitation would not substantially interfere with the parent-child relationship.

---

[2] After these proceedings began, the grandparents began writing letters to the children, which they gave to the guardian ad litem who then sent them to the children's therapists. With the mother's consent, the first letter from both grandparents was shared with the children. However, the grandfather's letter, which arrived next, was not read to the children, nor were any of the letters and cards that followed.

[3] At the time of the father's death, all the parties resided in the same county. Immediately thereafter, the mother and the children moved to another county to avoid the media and because of the mother's fear for her own safety.

Remarkably, the family court made this finding while at the same time noting that "[t]his Judge has never experienced the level of tension as between the parties in this case."

None of this evidence was considered in the majority opinion. Inexplicably, the majority summarily concluded that "the family court gave serious and thoughtful consideration to the therapists' opinions." Slip op. at 28. However, the family court's order belies that conclusion. In its September 19, 2019 order, the family court made the following finding:

> After considering the testimony of the children's counselors, it is evident to the Court that the counselors are advocates for their respective clients. Counselors may be subject to certain ethical constraints that could prevent him/her from making recommendations that are inconsistent with a client's wishes and/or desires. Consequently, recommendations by a counselor may not always align with what is in a particular child's best interest.

I am completely astounded by the decision to disregard this kind of expert testimony, which is routinely relied upon by courts. As a matter of course, the testimony of counselors and therapists is critical in cases involving minor children. They interview the children; they provide treatment; and they are in an excellent position to make a recommendation regarding what is in their patients' best interests. To suggest that these highly trained professionals are incapable of making recommendations consistent with the children's best interests is absurd. Of course, therapists advocate for their patients, but they do so based on their psychological assessments—not as a defense attorney would if his client were to demand a particular course of action. Furthermore, therapists are required to make and

4

regularly do make assessments and render opinions in court that do not always agree with the desires of their patients or others. For the majority to not recognize the refusal of the family court to consider the therapists' opinions as clear error is inexcusable.

The same is true with respect to the complete disregard of the children's preferences. The family court found that the children were too young to state a preference. However, the Grandparent Visitation Act[4] expressly provides for the consideration of the children's wishes and concerns. West Virginia Code § 48-10-601 (2001) plainly authorizes "the court, in its discretion, [to] interview in chambers any or all involved children regarding their wishes and concerns." While the family court obviously did not exercise its discretion to conduct such an interview, the children's wishes were made known to the court through their therapists' testimonies and should not have been ignored.

In this instance, the children's preferences were critically important because of the circumstances that led to the filing of the petition for grandparent visitation. These children witnessed an unspeakable tragedy. Not only were they forced to come to terms with their father's death and the manner in which he died that they witnessed, they suddenly found themselves the subject of a tug of war between their grandparents and their mother. Believing they knew what was best, the grandparents began this tug of war within days of the horror witnessed by the children by trying to force them to attend their father's funeral

---

[4] W. Va. Code § § 48-10-101-to 48-10-1201.

5

against their mother's wishes. Indeed, at this early stage of the proceedings, the grandparents were trying to force contact and demanding that these obviously traumatized children be displayed in public without considering how they would react and without giving their fit mother time to assess their needs and determine what would be best for them. To disregard the children's preferences under these circumstances further amplifies the tragedy they have suffered.

In addition to considering the best interests of the children, our precedent demands that a fit parent's[5] preference with respect to grandparent visitation be afforded special weight and consideration. As this Court has explained:

> The mandates of *Troxel* [*v. Granville*, 530 U.S. 57 (2000),] require that the wishes of the petitioner, as a fit parent presumed capable of rational choices concerning the relationships to be enjoyed by her child, be accorded special weight. As the Supreme Court stated in *Troxel,* there is a "presumption that fit parents act in the best interests of their children." 530 U.S. at 69[.]

*In re Visitation of A.P.*, 231 W. Va. 38, 43-44, 743 S.E.2d 346, 351-52 (2013). It is generally recognized that "'special weight' indicates considerable deference." *Id.* at 42 n.7, 743 S.E.2d at 350 n.7. While the family court purportedly gave special weight to the mother's preference, the final order is devoid of any substantive explanation as to why the mother's interest in making decisions regarding her children is outweighed by a continuing relationship with the grandparents. It is obvious that no deference was given to the

---

[5] The family court made a finding that the children's mother is a fit parent.

6

mother's wishes. Rather, the mother's belief that visitation with the grandparents was not in the children's best interests was simply dismissed based on the family court's perception that she was "attempting to poison the children's relationship with the grandparents." There was, however, absolutely no evidence that the mother was improperly influencing the children. Instead, the evidence was that the mother's belief that visitation was not appropriate at that time was based on the therapists' opinions that any interaction between the children and the grandparents would not be in their best interests.[6]

Based on all the above, I believe that the petitioner mother more than satisfied her burden of showing that the decision of the family court affording the respondent grandparents visitation with her children is erroneous. Like the family court, the majority has merely looked at the factors set forth in West Virginia Code § 48-10-502 (2001) and concluded that those factors weigh in favor of visitation. While the statutory factors must be considered,[7] the analysis does not end there. West Virginia Code § 48-10-501 (2006) mandates that the necessary findings for a grant of visitation to a grandparent are "that visitation would be in the best interests of the child and would not substantially interfere with the parent-child relationship." Despite overwhelming evidence provided by the

---

[6] Notably, the mother is a medical doctor and is trained to treat post-traumatic stress disorder.

[7] *See Meagan S. v. Terry S.*, 242 W. Va. 452, 456, 836 S.E.2d 419, 423 (2016) (finding failure to make specific findings of fact regarding grandparent visitations factors was clear error).

children's therapists that precluded these necessary findings, the family court determined that it knew better and ordered grandparent visitation to commence with the assistance of a reunification counselor. Without any analysis of the best interests of the children, the majority has now upheld that decision because the mother "did not point to the actual testimony gleaned from the therapists at the August 26, 2019 hearing but instead directed us to the findings in the family court's orders." Slip op. at 28. To elevate form over substance when the psychological welfare of children is at stake is not in the best interests of anyone.

The majority's decision in this case is contrary to the evidence in the record and contrary to the law. While I understand the desire to allow grandparents to maintain contact with their grandchildren and be a part of their lives, the health and the welfare of the children must come first. "The best interests of the child[ren] must be given greatest priority, and the rights of the child[ren] are superior to those of the grandparent[s] seeking visitation." *Mary Jean H. v. Pamela Kay R.*, 198 W. Va. 690, 693, 482 S.E.2d 675, 678 (1996).

During oral argument in this case, the parties indicated that the first attempt of the reunification counselor to facilitate visitation had failed. It is my hope that the majority's decision will not cause these children to be subjected to yet another failed effort at forced reunification. Based on the record before this Court, the children are not presently prepared to engage in yet more counseling with their grandparents. They need time on

their own to heal and to decide when they are ready to see their grandparents again. Unfortunately, because of the majority's decision, the family court, the circuit court, this Court, and worst of all the children have not seen the last of the proceedings in this matter. Even though there has already been a failure of the proposed reunification, I foresee continued demands for additional attempts. The courts and the parties will, in my opinion, be locked in conflict for the foreseeable future because the majority has failed to recognize that, in this case, ultimately the fit parent must be permitted to make good faith decisions regarding her children. *Troxel* requires this outcome, and the future well-being of these children demands it.

Accordingly, I respectfully dissent from the majority's decision in this case.