IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**March 25, 2024**

C. CASEY FORBES, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**SIERRA J. & ADRIANO D.,**
**Respondents Below, Petitioners**

**v.) No. 23-ICA-444**          (Fam. Ct. Berkeley Cnty. No. FC-02-2022-D-590)

**DAVID J. & MARILYN J.,**
**Petitioners Below, Respondents**

### MEMORANDUM DECISION

Petitioners Sierra J. ("Mother") and Adriano D. ("Father")[1] appeal the Family Court of Berkeley County's September 19, 2023, order granting grandparent visitation to Respondents and maternal grandparents David J. & Marilyn J. ("Grandparents").[2] The family court held that it was in the child's best interest to have grandparent visitation.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the family court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mother and Father were never married but share one child, A.D. Events leading to this appeal began with a custody order entered by the family court on December 30, 2020, granting Mother parenting time each Sunday from 11:00 a.m. through Wednesday at 11:00 a.m. with Father having all remaining time. Mother and the child resided with Grandparents until June of 2022, when Sierra J. and Grandparents had a verbal dispute. Grandparents allege that they asked Mother to leave their home due to her alcohol use and reckless behavior. However, Mother alleges that Grandparents were upset because Mother planned to move to North Carolina. Mother further alleged that Grandparents colluded with Father by providing him with information regarding her mental health in return for Father's promise to allow them to see the child.

---

[1] To protect the confidentiality of the juvenile involved in this case, we refer to the parties' last name by the first initial. *See*, *e.g.*, W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] Sierra J. and Adriano D. are self-represented. David J. and Marilyn J. did not participate in the appeal.

After learning of Mother's behavior from Grandparents, Father filed a petition for custody and child support on July 7, 2022. Father allowed Grandparents to see the child one time, but shortly thereafter stopped all contact between them. A hearing was held on Father's petition on September 6, 2022. The family court entered its order on September 7, 2022, granting primary custody to Father and one weekend per month visitation to Mother.

On September 1, 2022, after Father stopped allowing Grandparents to see the child, they filed a petition for grandparent visitation. On July 25, 2023, a hearing was held on the petition for grandparent visitation and a guardian ad litem ("GAL") was appointed. At that hearing, Grandparents testified that Mother and child lived with them for a significant period of time; they acted as caretakers for the child, took the child on vacation, and provided clothing for the child; Mother cut off contact between them and the child after she was asked to leave the home due to her alcohol use; and Mother had attempted suicide by way of a vehicle crash. Grandparents further testified that after Mother left their residence with the child, they thought it was important to inform Father about her mental health issues to keep the child safe.

Additionally, at the hearing on July 25, 2023, Mother alleged that Father stopped allowing Grandparents to visit because they showed up unannounced, called and texted excessively, and called the police to conduct wellness checks on the child. Relevant to this appeal, Mother sought to have her witnesses testify telephonically. However, because there was no proof that Mother's witness list was provided to Grandparents, and because Mother failed to make arrangements with the family court for her witnesses to appear by video, the family court did not allow Mother's witnesses to testify.

On September 19, 2023, the family court entered its order granting visitation to Grandparents on the first weekend of every month from Saturday at 10:00 a.m. until Sunday at 6:00 p.m. The family court found that Grandparents acted in good faith by filing their petition for visitation, Mother and Father appear to be using the child to hurt Grandparents, and it was in the child's best interest to have visitation with Grandparents. It is from the September 19, 2023, order that Mother and Father now jointly appeal.

For these matters, we use the following standard of review.

> "In reviewing . . . a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*." Syl. Pt., [in part,] *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004).

2

*Amanda C. v. Christopher P.*, 248 W. Va. 130, 133, 887 S.E.2d 255, 258 (Ct. App. 2022); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court order).

On appeal, Mother and Father (collectively, "Parents") raise four assignments of error, which we will address in turn. First, Parents assert that the family court violated their Constitutional right to direct the upbringing of their child. We are not persuaded by this argument. When weighing a petition for grandparent visitation, a family court must consider the thirteen factors outlined in The Grandparent Visitation Act, which is codified in West Virginia Code § 48-10-502 (2001).[3]   Upon consideration of these factors, the "family court shall grant reasonable visitation to a grandparent upon a finding that visitation would be in the best interests of the child and would not substantially interfere

---

[3] The thirteen factors include:

(1) The age of the child;
(2) The relationship between the child and the grandparent;
(3) The relationship between each of the child's parents or the person with whom the child is residing and the grandparent;
(4) The time which has elapsed since the child last had contact with the grandparent;
(5) The effect that such visitation will have on the relationship between the child and the child's parents or the person with whom the child is residing;
(6) If the parents are divorced or separated, the custody and visitation arrangement which exists between the parents with regard to the child;
(7) The time available to the child and his or her parents, giving consideration to such matters as each parent's employment schedule, the child's schedule for home, school and community activities, and the child's and parents' holiday and vacation schedule;
(8) The good faith of the grandparent in filing the motion or petition;
(9) Any history of physical, emotional, or sexual abuse or neglect being performed, procured, assisted or condoned by the grandparents;
(10)   Whether the child has, in the past, resided with the grandparent for a significant period or periods of time, with or without the child's parent or parents;
(11)   Whether the grandparent has, in the past, been a significant caretaker for the child, regardless of whether the child resided inside or outside of the grandparent's residence;
(12)   The preference of the parents with regard to the requested visitation, and
(13)   Any other factor relevant to the best interests of the child.

with the parent-child relationship." W. Va. Code § 48-10-501 (2006). However, as part of this analysis, the family court is required to give extra weight to a fit parent's preference regarding grandparent visitation. *In re Visitation of A.P.*, 231 W. Va. 38, 42, 743 S.E.2d 346, 350 (2013) (holding "if a fit parent's decision of the kind at issue here becomes subject to judicial review, the court must accord at least some special weight to the parent's own determination.") (quoting *Troxel v. Granville*, 530 U.S. 57, 70, 120 S.Ct. 2054, 2062, (2000)). The Supreme Court of Appeals of West Virginia has held that "those provisions [of West Virginia Code § 48-10-502] contemplate the special weight that is constitutionally afforded a fit parent's wishes in its twelfth factor." *In re Visitation of L.M.*, 245 W. Va. 328, 337, 859 S.E.2d 271, 280 (2021).

Upon review of the family court's order, we find that the family court gave appropriate consideration to the factors listed in The Grandparent Visitation Act, including the twelfth factor. In weighing those factors, the family court found that the child lived with Grandparents and was cared for by them for a significant period of time, the Grandparents acted both timely and in good faith in filing their petition, and although the Parents object to grandparent visitation, the family court found that they are "using the child as a mechanism to cause pain and suffering" and "clearly not taking into account what would be best for the child." Furthermore, the GAL recommended that the child have continued contact with Grandparents. Based upon its consideration of the thirteen factors and the GAL's recommendation, the family court held that it was in the child's best interest to maintain contact with Grandparents. Therefore, we find no error in the family court's decision with regard to this assignment of error.

As their second assignment of error, Parents assert that the family court erred when it focused on Mother's mental health issues but failed to recognize her progress and proof that she had stopped using drugs and no longer posed a risk of harm to herself or others. We disagree. This Court cannot set aside a family court's findings "unless clearly erroneous," and a finding is clearly erroneous only when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Syl. Pt. 1, in part, *In re Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996). Under the clearly erroneous rule, appellate courts of this State do not reweigh the evidence and will not reverse a family court's findings simply because it may have viewed the evidence differently. *Mulugeta v. Misailidis*, 239 W. Va. 404, 408, 801 S.E.2d 282, 286 (2017). Here, Parents are simply asking that we reweigh the evidence and rule in their favor. We decline to do so. Upon review of the hearing DVD and the September 19, 2023, order, we find that the family court heard and fairly analyzed all evidence before it. Parents have failed to demonstrate that the findings of the family court were clearly erroneous or that the family court abused its discretion by concluding that grandparent visitation is in the child's best interest.

As their third assignment of error, Parents contend that the family court erred when it did not allow Mother's witnesses to testify. We disagree. West Virginia Code § 51-2A-

7(a)(1) (2013) provides family courts with authority to "[m]anage the business before them." Moreover, Rule 18 of the West Virginia Rules of Practice and Procedure for Family Court provides that the family court *may* permit any witness to testify telephonically or by videoconference. Here, the record reflects that there was no proof that Mother sent her witness list to Grandparents. Additionally, Mother did not arrange for her long-distance witnesses to appear by video. The family court was willing to hear in-person witnesses but would not allow telephonic witnesses due to the inability to make a credibility determination telephonically. It was within the family court's discretion to prohibit Mother's witnesses from testifying telephonically. Therefore, we find no error in the family court's decision regarding this assignment of error.

As their fourth and final assignment of error, Parents assert that both the family court and the GAL were provided with information regarding Marilyn J. being the subject of a Child Protective Services ("CPS") investigation in New York and failed to investigate further. Parents have the duty on appeal to support their arguments with "appropriate and specific citations to the record . . ." W. Va. R. App. P. 10(c)(7). Such specific citations include "citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal." *Id.* Otherwise, "[t]he Intermediate Court . . . may disregard errors that are not adequately supported by specific references to the record on appeal." *Id.* Here, there is nothing in the record that demonstrates that Parents raised this issue before the family court. This likely explains why Parents' brief does not contain any citation to the record that pinpoints when and how this issue was presented to the family court. Accordingly, this Court disregards this assignment of error as not adequately preserved for appeal.

Accordingly, we affirm the family court's September 19, 2023, order.

Affirmed.

**ISSUED:** March 25, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear