IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

FILED
**July 1, 2024**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**KATIE H.,**
**Respondent Below, Petitioner**

**v.) No. 23-ICA-483**     (Fam. Ct. Berkeley Cnty. No. FC-02-2022-D-619)

**PAUL M., SR., and LORI M.,**
**Petitioners Below, Respondents**

## MEMORANDUM DECISION

Petitioner Katie H.[1] ("Mother") appeals the Family Court of Berkeley County's September 12, 2023, final order awarding grandparent visitation to Respondents Paul M., Sr., and Lori M. ("Grandparents"). Grandparents filed a response in support of the family court's decision.[2] Mother filed a timely reply. The family court concluded that it was in the child's best interest to have visitation with Grandparents.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the family court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Katie H. and Paul M., Jr. ("Parents") were never married but share one child, C. M., born in 2016. Grandparents are the child's paternal grandparents. From the child's birth until August of 2021, the child spent significant time with Grandparents, including several overnights per week while Parents worked. Parents ended their relationship in 2017 when the child was approximately one and a half years old and agreed to a 50-50 custody arrangement. Paul M., Jr. ("Father") eventually stopped allowing the child to visit Grandparents, and shortly before this litigation began, voluntarily modified his parenting time down to only four hours per week. Mother allowed the child to visit Grandparents a couple of times after the parties separated but the record does not reflect the dates of said visits. Father is now remarried.

---

[1] To protect the confidentiality of the juvenile involved in this case, we refer to the parties' last name by the first initial. *See, e.g.*, W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] Mother is self-represented. Grandparents are represented by Frank M. Aliveto, Esq.

On September 22, 2022, after months of no visits with the child, Grandparents filed a Petition to Establish Grandparent Visitation and a motion to appoint a Guardian ad Litem ("GAL"). On October 12, 2022, Mother filed responsive pleadings wherein she objected to their request for grandparent visitation. The first hearing was held on October 21, 2022. At that hearing, the family court ordered the parties to participate in mediation, but no agreement was reached. A status hearing was held on March 22, 2023, and the final hearing was set for August 15, 2023.

At the final hearing, Mother testified that grandparent visitation was not in the child's best interest because Grandparents did not treat Mother with kindness early on in Parents' relationship, and that they criticized her, put her down, and acted like she was not good enough. Mother testified that Parents separated mainly because of the way Grandparents treated her and interfered with Father's parenting. Mother stated that she would be agreeable to only limited supervised visitation because Grandparents regularly talked badly about Parents in front of the child.

Also, at the final hearing on August 15, 2023, Father testified that grandparent visitation was not in the child's best interest because he feared that Grandparents would coddle the child and interfere with his way of parenting. When questioned by the family court, Father admitted that the child had a bond with Grandparents.

Grandparents testified that they were significantly involved in the child's life from birth. They babysat the child up to four nights a week while Parents worked, babysat when Parents had appointments, took the child on vacation, and bought the child a bed when Mother advised that one was needed for the child. Grandparents further testified that they tried to resolve the matter outside of family court before filing their petition for visitation.

The GAL also presented testimony during the final hearing, expressing concern that Father had recently voluntarily modified his parenting time down to only four hours per week. Based upon the totality of circumstances, the testimony of the parties, and his own investigation, the GAL reported that grandparent visitation would be in the child's best interest.

The family court entered its final order on September 12, 2023, and found that Parents' testimony was not credible. The family court further found that the child was used to punish Grandparents for inconsequential disagreements and that it was undisputable that the child had a bond with Grandparents. Accordingly, the court ruled that grandparent visitation would be in the child's best interest and ordered two four-hour, phased-in visitations two weeks apart followed by visitation on the third weekend of each month and weekly video chats. It is from the September 12, 2023, order that Mother now appeals.

When reviewing the order of a family court, we apply the following standard of review:

When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review the findings of fact made by the family court for clear error, and the family court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

Syl. Pt. 2, *Christopher P. v. Amanda C.*, No. 22-918, 2024 WL 2966177, __ W. Va. __, __ S.E.2d __ (2024); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders).

On appeal, Mother raises five assignments of error. As her first and second assignments of error, Mother contends that the family court ignored multiple West Virginia Code sections which define the rights and responsibilities of custodial parents, and, because Mother is a fit parent, she should decide if or when grandparent visitation should occur. We disagree.

When weighing a petition for grandparent visitation, a family court must consider the thirteen factors outlined in The Grandparent Visitation Act, which is codified in West Virginia Code § 48-10-502 (2001).[3] Upon consideration of these factors, the "family court

---

[3] The thirteen factors include:

    (1) The age of the child;
    (2) The relationship between the child and the grandparent;
    (3) The relationship between each of the child's parents or the person with whom the child is residing and the grandparent;
    (4) The time which has elapsed since the child last had contact with the grandparent;
    (5) The effect that such visitation will have on the relationship between the child and the child's parents or the person with whom the child is residing;
    (6) If the parents are divorced or separated, the custody and visitation arrangement which exists between the parents with regard to the child;
    (7) The time available to the child and his or her parents, giving consideration to such matters as each parent's employment schedule, the child's schedule for home, school and community activities, and the child's and parents' holiday and vacation schedule;
    (8) The good faith of the grandparent in filing the motion or petition;
    (9) Any history of physical, emotional, or sexual abuse or neglect being performed, procured, assisted or condoned by the grandparent;
    (10) Whether the child has, in the past, resided with the grandparent for a significant period or periods of time, with or without the child's parent or parents;

3

shall grant reasonable visitation to a grandparent upon a finding that visitation would be in the best interests of the child and would not substantially interfere with the parent-child relationship." W. Va. Code § 48-10-501 (2006). As part of its analysis, the family court is required to give extra weight to a fit parent's preference regarding grandparent visitation. *In re Visitation of A.P.*, 231 W. Va. 38, 42, 743 S.E.2d 346, 350 (2013) (holding "if a fit parent's decision of the kind at issue here becomes subject to judicial review, the court must accord at least some special weight to the parent's own determination.") (quoting *Troxel v. Granville*, 530 U.S. 57, 70, 120 S. Ct. 2054, 2062 (2000)). The Supreme Court of Appeals of West Virginia ("SCAWV") has held that "those provisions [of West Virginia Code § 48-10-502] contemplate the special weight that is constitutionally afforded a fit parent's wishes in its twelfth factor." *In re Visitation of L.M.*, 245 W. Va. 328, 337, 859 S.E.2d 271, 280 (2021). Here, the family court properly weighed the grandparent visitation factors with Parents' preferences in determining the child's best interest, which is paramount. Therefore, we conclude that the family court's ruling was not erroneous or an abuse of discretion.

As her third assignment of error, Mother argues that the family court erred when it ignored multiple statements presented by Parents surrounding the mental abuse and manipulation that Grandparents inflicted upon them. This argument lacks merit. The SCAWV has consistently held that "[a]n appellate court may not decide the credibility of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact." *State v. Guthrie*, 194 W. Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995). Here, the family court found that "the testimony of the parents [was] simply not credible" and that "[t]here was no credible evidence or testimony as to any type of mentally abusive conduct by the [Grandparents]." The family court further found that Parents used Grandparents for daycare when it was convenient and "the child was used as a punishment to [Grandparents] for inconsequential disagreements between [the parties]." Mother is asking this Court to weigh Grandparents' credibility after the family court found their testimony to be more credible than that of Parents, which is improper under *Guthrie*. We, therefore, find this assignment of error lacks merit.

Fourth, Mother asserts that there were instances of ethical concerns about the GAL and Mother's former attorney. We decline to address this assignment of error, to the extent

---

(11) Whether the grandparent has, in the past, been a significant caretaker for the child, regardless of whether the child resided inside or outside of the grandparent's residence;

(12) The preference of the parents with regard to the requested visitation; and

(13) Any other factor relevant to the best interests of the child.

it involves a potential lawyer disciplinary dispute, because the Intermediate Court of Appeals lacks jurisdiction for these matters.[4]

Lastly, Mother contends that the family court suggested that counseling between Grandparents and Father may aid in creating a healthier environment for the child but neither has sought counseling. This argument lacks merit for two reasons. First, because this was a "suggestion" made by the family court, not a conclusion of law or holding that was incorporated into the final order, it was not mandatory. Second, if Mother thought the family court ordered the parties to attend counseling, she could have raised objections under Rule 22(b) of the West Virginia Rules of Practice and Procedure for Family Courts, which allows parties to send written objections within five days of receiving the draft final order. Mother failed to exercise this option.

Accordingly, we affirm the family court's September 12, 2023, final order.

Affirmed.

**ISSUED:** July 1, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear

---

[4] The West Virginia Office of Lawyer Disciplinary Counsel has authority over alleged violations of the Rules of Professional Conduct.