**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **A.L.**

**No. 21-0938** (Kanawha County 20-JA-36)

**MEMORANDUM DECISION**

Petitioners Maternal Grandparents T.C. and V.C., by counsel Alan L. Pritt, appeal the Circuit Court of Kanawha County's October 19, 2021, order reunifying A.L. with the father.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem, Sharon K. Childers, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in failing to adjudicate the father and in denying them visitation.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2020, the DHHR filed an abuse and neglect petition against the mother alleging that she had a history of abusing illicit substances and that she and A.L. had been missing since November of 2019 after residing at petitioners' home since December of 2015.[2] The DHHR alleged that petitioners filed a missing person report in January of 2020 and that when the Kanawha County Sheriff's Department investigated, A.L.'s peer at school disclosed that then-six-year-old

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]In December of 2019, petitioners filed a petition for guardianship and immediate custody of A.L. in the family court. However, the matter was removed to circuit court for the initiation of the instant child abuse and neglect case.

1

A.L. told her that the father punched her in the stomach on at least one occasion. Finally, the DHHR alleged that the parents failed to provide A.L. with the necessary food, clothing, supervision, and housing at times since her birth by failing to provide the child with financial support during at least some periods of A.L.'s life.

Around March of 2020, the mother returned to West Virginia and authorities removed the child and placed her in foster care. That same month, the circuit court held a review hearing and heard arguments on petitioners' motion to intervene. The DHHR informed the court that it intended to amend the petition to add petitioners as party respondents. As such, the court provisionally granted petitioners' motion to intervene and allowed them to attend the proceedings. The court also ordered the parents and petitioners to submit to parental fitness evaluations.

In May of 2020, the psychologists released their forensic psychological evaluations, which noted that A.L. participated in a Child Advocacy Center ("CAC") interview in November of 2019. During her CAC interview, the child disclosed instances of abuses such as being locked in a room with no lights, whipped for spilling milk, and hit with a pan by the father. The child further disclosed that the father pulled down her pants and scratched her genitals. It was after this CAC interview that the mother fled West Virginia with A.L. to New Jersey. Once in New Jersey, the Department of Child and Families completed an assessment on the mother and child, which indicated that the mother claimed to be involved in human trafficking and that A.L. had been sexually abused by petitioners and the father. The mother also claimed that her life was in danger and that human traffickers had drugged her with Valium. The mother further admitted to occasionally using methamphetamine since 2017. According to the evaluation, A.L. disclosed to a doctor performing an evaluation in New Jersey that she missed her friends at school in West Virginia. A.L. also informed the evaluator that her father hit her on several different occasions.

Next, the psychologists conducted their own interview with A.L. According to this evaluation, A.L. struggled to provide linear, detailed accounts of the events she alleged occurred. In one instance, she claimed to have been sexually abused at an event where there were a number of other people gathered. When asked why the others did not see the abuse, she said the perpetrator told them to "[l]ook over there," while pointing in another direction, fooling the people into looking away while the abuse occurred. A.L. also appeared hyper focused on a news interview with her father after she was reported missing. According to the evaluation, the foster mother said A.L. repeatedly asked her to show her the video, and it appeared that she had never seen the video but talked about it as though she had. After interviewing her at length and conducting a full evaluation, the examiners concluded that A.L. was likely no longer able to discern what actually occurred from what she had been told by the mother.

In June of 2020, the DHHR filed an amended petition naming petitioners as guardians of A.L. but making no allegations of abuse and neglect against them[3]. By August of 2020, the circuit court held an adjudicatory hearing wherein it determined that the mother lacked the capacity to stipulate to abusing and neglecting the child, citing ongoing concerns with the mother's mental health issues. The court also ordered therapeutic reunification services between the child,

---

[3]It is unclear why the DHHR named petitioners as guardians as they never obtained guardianship of the child.

petitioners, and the father, and ordered the parties to follow the recommendations of the child's therapist.

In November and December of 2020, the circuit court held adjudicatory hearings, during which a psychologist testified that she interviewed A.L. and diagnosed her with trauma and stressor-related disorders. The psychologist explained that A.L. was affected behaviorally and emotionally by being removed from her home by the mother, taken out of state, and not understanding what was happening. The psychologist further testified that A.L. seemed confused and that the mother likely coached the child to report allegations of abuse. According to the psychologist, this coaching affected A.L.'s ability to distinguish between fantasy and reality. Finally, another psychologist testified that she interviewed the mother and opined that she exhibited paranoia-based thinking, as well as a recent history of substance abuse and erratic behaviors. The psychologist further testified that the mother's credibility and mental well-being were in significant doubt. At the December of 2020 hearing, petitioners moved to be considered placement of the child if the child's permanency plan of reunification with the father failed. The court granted this motion and petitioners were added as a concurrent permanency plan home.

The following month in January of 2021, the circuit court held an adjudicatory hearing wherein the DHHR put on evidence that the mother left West Virginia with A.L. for several months, moving from shelter to shelter, and that during one move, the child was sexually assaulted in a shelter bathroom while in the mother's care. In light of the evidence presented over several adjudicatory hearings, the circuit court found that the mother was an abusing and neglectful parent based upon her "severe mental health issues that impacted her ability to parent and caused severe emotional trauma to the [] child." Pertinent to this appeal, although the father was initially named a respondent parent in the petition, the DHHR put forward no evidence against him, and the court did not adjudicate him as an abusing parent.

The circuit court held multiple dispositional hearings in March and April of 2021. The court ultimately terminated the mother's parental rights by its April 15, 2021, dispositional order. The Court affirmed the termination of the mother's parental rights in *In re A.L.*, No. 21-0369, 2021 WL 5178518 (W. Va. Nov. 8, 2021)(memorandum decision). In March of 2021, the court increased A.L.'s visits with petitioners and the father.

In June of 2021, the court held a permanent placement review hearing. The court granted the DHHR and the guardian discretion to increase visitations with petitioners and the father, in light of the child's therapist's recommendations. Petitioners moved for immediate custody of the child, but the court held the motion in abeyance to allow A.L. to further develop in reunification therapy.

The circuit court held two permanent placement review hearings in September of 2021. The court admitted the DHHR's summaries and the child's therapy reports. Prior to the hearing, the guardian submitted a memorandum recommending that A.L. be reunified with the father based upon the fact that, although he had previously been awarded equal custody of A.L. in family court, the mother alienated him by filing multiple baseless domestic violence protective orders and fleeing from state to state with A.L. The guardian noted that there were no allegations against petitioner and that he was not adjudicated as an abusing parent. Regarding petitioners, the guardian

expressed concerns with petitioner grandfather's "open disdain" of the father, and believed they exhibited controlling behavior when they moved to prevent A.L. from going on a Disney World vacation with the foster family.

At the hearings, petitioners, the child's therapist, and the father testified. Notably, in petitioners' closing arguments, they acknowledged that there were no allegations against the father in the petition. Upon the close of evidence, the court found that the father had been deemed a nonoffending parent during the proceedings and "was never adjudicated as an abusive and neglectful parent." The court noted that the father participated in all court-ordered requirements such as his parental fitness evaluation and reunification therapy. With the support of A.L.'s therapist, the father earned increased visits and eventually obtained unsupervised overnight visits with A.L. The court further found that the father had been prevented from playing an active role in the child's life due to the terminated mother and petitioners' interference and alienation. The court found the father's testimony credible and that he had A.L.'s best interest in mind. The court also noted that A.L. had siblings with the father with whom she had developed bonds. Regarding petitioners, the court noted that it had reviewed a prior child abuse and neglect involving petitioners wherein they relinquished their parental rights to a previously adopted child in 2018 but testified that they had not done so. The court was very concerned by this testimony and petitioners' child abuse and neglect history. Finally, the court found that petitioners had never been deemed legal guardians in any prior family court proceeding, clearly showed animosity for the father, and would likely continue to support the mother. The court also noted that the child's therapist testified that petitioners' apparent disapproval of the father caused the child severe anxiety and emotional distress, and she experienced increased confusion and anxiety after visits with petitioners. Ultimately, the court returned full legal and physical custody of A.L. to the father and granted him sole discretion as to any visitation between the child and petitioners. Petitioners appeal the October 19, 2021, final order.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioners argue that the circuit court erred in failing to adjudicate the father. Petitioners cite Rule 27 of the Rules of Procedure for Child Abuse and Neglect Proceedings, which

requires that "[a]t the conclusion of the adjudicatory hearing, the court shall make findings of fact and conclusions of law, in writing or on the record, as to whether the child is abused and/or neglected in accordance with W. Va. Code § 49-4-601(i)." According to petitioners, the petition stated that a child at A.L.'s school disclosed that A.L. told her that the father punched her in the stomach. Additionally, petitioners state that the petition included general allegations of neglect against both parents. Petitioners also mention domestic violence protective orders that the mother obtained against the father but were not included in the petition. Petitioners contend that these allegations of abuse and neglect were never addressed by the court.

To begin, the record shows that during petitioners' closing arguments at the final permanency review hearing, they twice mentioned that the father was "nonoffending" or had no allegations against him. Following petitioners' closing arguments, the guardian likewise stated that the father had no allegations against him. Finally, the prosecuting attorney also stated during his closing remarks that the father was nonoffending and had no allegations against him. Notably, petitioners do not cite to anywhere in the record where they objected to the adjudication of the mother only, or otherwise attempted to raise allegations against the father below. When reviewing the record as a whole, it is apparent that the mother—who was found to have severe untreated mental health issues—had coached A.L. and had created false allegations of abuse not only against the father but against petitioners as well as she claimed that they had sexually abused her for years and had attempted to sell her into human trafficking. Further, evidence presented at the final permanency review hearing supported a finding that petitioners purposefully interfered with the father's ability to visit and parent A.L. prior to the petition's filing. In light of petitioners' apparent acquiescence to the DHHR's refusal to pursue adjudication of the father on unsubstantiated claims, petitioners' argument on appeal is disingenuous at best and conveniently ignores the entire record of this lengthy case.

Lastly, petitioners argue that the circuit court erred in denying them visitation. To begin, the circuit court did not deny petitioners visitation. Rather, they were granted visitation but at the sole discretion of the father. *See In re* H.M., No. 20-0577, 2021 WL 5150060, at *4 (W. Va. Nov. 5, 2021)(memorandum decision) ("We note that petitioners' argument is disingenuous, at best, because it wholly misrepresents the record. The circuit court did not deny petitioners visitation with the child. Indeed, the circuit court ordered that petitioners could enjoy visitation with the child at the [adoptive] grandparents' discretion."). Because petitioners were not denied visitation, as they allege on appeal, they necessarily cannot be entitled to relief.

Nonetheless, we further find that petitioners' argument that the guardian's investigation and recommendation for permanent placement was deficient lacks merit. Petitioners rely on Appendix A of the Rules of Procedure for Child Abuse and Neglect Proceedings containing guidelines for appointed guardians. Petitioners cite section six, which states that a guardian shall conduct an independent investigation of the facts of the case and

> a. When appropriate, conduct in-home visits during which the [guardian] can observe the respective living environments of the child's parents or caretakers and their interaction with the child.

5

b. When appropriate, interview caregivers, caseworkers, therapists, school personnel, medical providers, relatives, siblings, and/or other individuals that have pertinent information regarding the child.

c. Ascertain the child's wishes when possible.

According to petitioners, the guardian failed to conduct an in-home visit with them, interview them, or otherwise watch their interactions with A.L. Confusingly, petitioners argue that the guardian did not object to their increased visits or receiving reunification services, but also argue that the "guardian appeared more concerned about the minor child maintaining a relationship with the foster family rather than [the] grandparents." Petitioners claim that these failures impacted the circuit court's final order.

Again, petitioners ignore several pertinent facts. Throughout the entirety of this case, A.L. was placed with a foster family, with whom any in-home visits would have been conducted. Secondly, there was ample evidence provided by the child's therapist concerning how visits with petitioners and visits with the father were impacting A.L. Additionally, as parties to this case, petitioners testified at the permanency review hearings. Considering that the guardian stayed in touch with A.L.'s foster family and her therapist, reviewed all records from prior family court proceedings involving the child, attended all hearings and multidisciplinary team meetings, and subsequently filed a memorandum with recommendations, one can hardly argue that the guardian's performance and investigation was wanting. Contrary to petitioners placing blame upon the guardian for their lack of structured visitation with A.L., the guardian recommended that they receive regular visitation with A.L. if she were reunified with the father. Only after the prosecuting attorney argued that petitioners had a history of interfering with the father's relationship with A.L. and that they had an open disdain for the father that negatively impacted A.L.'s emotional state, did the court rule that the father would have sole discretion with all visitations. As such, petitioners ignore the plethora of reasons given by the parties and the court for granting the father sole discretion in visitation and their blame against the guardian is misplaced.

Petitioners also cite authorities regarding post-termination visitation. However, these authorities are inapplicable as petitioners are not parents whose parental rights were terminated.[4] Petitioners were never legal custodians or guardians of the child, and as such, had no such rights to terminate. Rather, petitioners stand only as grandparents and in this scenario, with a child being reunified with a fit parent, the parent's "fundamental right . . . to make decisions concerning the care, custody, and control of their children" will not be disturbed. *Troxel v. Granville*, 530 U.S. 57, 66, (2000)(citations omitted.) Furthermore, this Court previously held as follows:

A parent has the natural right to the custody of his or her infant child, unless the parent is an unfit person because of misconduct, neglect, immorality, abandonment,

---

[4]We note that petitioners' reliance on anything other than the grandparent visitation statute is an attempt to obtain visitation by means that cannot entitle them to relief. *See* Syl. Pt. 3, *In re Visitation of A.P.*, 231 W. Va. 38, 743 S.E.2d 346 (2013) ("The Grandparent Visitation Act, W.Va. Code § 48-10-101 et seq. [2001], is the exclusive means through which a grandparent may seek visitation with a grandchild.").

or other dereliction of duty, or has waived such right, or by agreement or otherwise has transferred, relinquished or surrendered such custody, the right of the parent to the custody of his or her infant child will be recognized and enforced by the courts.

Syl., *Whiteman v. Robinson*, 145 W. Va. 685, 116 S.E.2d 691 (1960). As the evidence below established that the father was a fit parent and that it was in A.L.'s best interest to be reunified with him, we find no error in the circuit court's final order, and petitioners are entitled to no relief.

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 19, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: May 12, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn

7