IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2026 Term

_____

No. 24-610

_____

In Re X.R.

FILED

**March 6, 2026**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

_____

Appeal from the Circuit Court of Mason County
The Honorable Anita Harold Ashley, Judge
Case No. CC-26-2022-JA-116

REVERSED IN PART, VACATED IN PART, AND REMANDED  WITH
INSTRUCTIONS

_____

Submitted:  January 28, 2026
Filed: March 6, 2026

Nic Dalton, Esq.
Nic Dalton Law PLLC
Point Pleasant, West Virginia
Counsel for R.S., Petitioner

John B. McCuskey, Esq.
Attorney General
Andrew T. Waight, Esq.
Assistant Attorney General
Charleston, West Virginia
Counsel for the Department of Human
Services, Respondent

Tanya Hunt Handley, Esq.
Handley Law Office, PLLC
Point Pleasant, West Virginia
Guardian ad litem for X.R.

David B. Richardson, Esq.
Winfield, West Virginia
Counsel for H.R., Respondent

JUSTICE EWING delivered the Opinion of the Court.

1.      "'When this Court reviews challenges to the findings and conclusions of the circuit court, a two-prong deferential standard of review is applied. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard.' Syl., *McCormick v. Allstate Ins. Co.*, 197 W.Va. 415, 475 S.E.2d 507 (1996)." Syllabus Point 1, *In re S.W.*, 236 W. Va. 309, 779 S.E.2d 577 (2015).

2.      ""'The exercise of discretion by a trial court in awarding custody of a minor child will not be disturbed on appeal unless that discretion has been abused; however, where the trial court's ruling does not reflect a discretionary decision but is based upon an erroneous application of the law and is clearly wrong, the ruling will be reversed on appeal." Syllabus point 2, *Funkhouser v. Funkhouser*, 158 W.Va. 964, 216 S.E.2d 570 (1975), *superseded by statute on other grounds as stated in David M. v. Margaret M.*, 182 W.Va. 57, 385 S.E.2d 912 (1989).' Syl. Pt. 1, *In re Abbigail Faye B.*, 222 W.Va. 466, 665 S.E.2d 300 (2008)."  Syllabus Point 2, *In re Antonio R.A.*, 228 W. Va. 380, 719 S.E.2d 850 (2011).

3.      "In the law concerning custody of minor children, no rule is more firmly established than that the right of a natural parent to the custody of his or her infant child is paramount to that of any other person; it is a fundamental personal liberty protected

i

and guaranteed by the Due Process Clauses of the West Virginia and United States Constitutions." Syllabus Point 1, *In re Willis*, 157 W. Va. 225, 207 S.E.2d 129 (1973).

4.      "A parent has the natural right to the custody of his or her infant child and, unless the parent is an unfit person because of misconduct, neglect, immorality, abandonment or other dereliction of duty, or has waived such right, or by agreement or otherwise has transferred, relinquished or surrendered such custody, the right of the parent to the custody of his or her infant child will be recognized and enforced by the courts." Syllabus, *Whiteman v. Robinson*, 145 W. Va. 685, 116 S.E.2d 691 (1960).

5.      "A psychological parent is a person who, on a continuing day-to-day basis, through interaction, companionship, interplay, and mutuality, fulfills a child's psychological and physical needs for a parent and provides for the child's emotional and financial support. The psychological parent may be a biological, adoptive, or foster parent, or any other person. The resulting relationship between the psychological parent and the child must be of substantial, not temporary, duration and must have begun with the consent and encouragement of the child's legal parent or guardian. To the extent that this holding is inconsistent with our prior decision of *In re Brandon L.E.,* 183 W.Va. 113, 394 S.E.2d 515 (1990), that case is expressly modified." Syllabus Point 3, *In re Clifford K.*, 217 W. Va. 625, 619 S.E.2d 138 (2005).

6.      "A child has a right to continued association with individuals with whom he has formed a close emotional bond, including foster parents, provided that a

determination is made that such continued contact is in the best interests of the child."

Syllabus Point 11, *In re Jonathan G.*, 198 W. Va. 716, 482 S.E.2d 893 (1996).

7.     "'At the conclusion of the improvement period, the court shall review the performance of the parents in attempting to attain the goals of the improvement period and shall, in the court's discretion, determine whether the conditions of the improvement period have been satisfied and whether sufficient improvement has been made in the context of all the circumstances of the case to justify the return of the child.' Syllabus Point 6, *In Interest of Carlita B.*, 185 W.Va. 613, 408 S.E.2d 365 (1991)."  Syllabus Point 2, *In re Jonathan Michael D.*, 194 W. Va. 20, 459 S.E.2d 131 (1995).

**Ewing, Justice**:

X.R. was born to J.R. (mother) and a then-unknown father. J.R., struggling with substance addiction, left X.R. with J.R.'s sister, H.R. Later, through an abuse-and-neglect proceeding, the Circuit Court of Mason County terminated J.R.'s parental rights to X.R. In that same proceeding, the petitioner, R.S., was identified as X.R.'s biological father. The Department of Human Services ("the DHS") filed an amended petition in which the petitioner was named; he was adjudicated as an abusing parent; and the circuit court then granted the petitioner a post-adjudicatory improvement period. The circuit court deemed H.R. to be X.R.'s "psychological parent." The petitioner successfully completed the improvement period. The circuit court ordered that the petitioner and H.R. share parenting time and decision making as to X.R. equally, then dismissed the petition and struck this matter from its docket.

On appeal, the petitioner argues that the parenting plan ordered by the circuit court violated his fundamental right to the care, custody, and control of X.R. We concur with the petitioner that the circuit court improperly granted H.R. equal custody and decision-making authority as to X.R., and so reverse that portion of the parenting plan. We vacate the remainder of the parenting plan and the final dismissal order and remand this matter to allow the circuit court to determine the scope of X.R.'s right of continued association with H.R.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

In October 2022, the DHS filed a petition alleging that two-year old X.R.[1] and her older sister, T.R.,[2] were abused and/or neglected children. The DHS alleged that the children's mother, J.R., was abusing drugs and unable to care for them. The DHS further alleged that C.R., father to T.R., abused drugs in the presence of T.R.[3] The DHS alleged that X.R.'s father was unknown, had provided no support to X.R., and had abandoned the child. As of November 2022, T.R. and X.R. were placed with their maternal aunt, H.R.

The DHS filed an amended petition in December 2022, alleging that J.R. had identified the petitioner as the father of X.R., although paternity had yet to be established. The DHS further alleged that the petitioner had "allowed [X.R.] to remain with [J.R.] knowing [J.R.] is drug-affected and [did] not have stable housing for the infant child to reside . . . ." It appears that J.R. later stipulated to the allegations in the amended petition and was adjudicated as an abusing and/or neglecting parent. The circuit court granted J.R. a post-adjudicatory improvement period. J.R. entered an inpatient drug rehabilitation

---

[1] We use initials to refer to the parties in this case because it involves minors and sensitive matters. *See* W. Va. R. App. P. 40(e)

[2] T.R. is not at issue in this proceeding.

[3] C.R.'s parental rights were terminated by order entered on December, 12, 2023.

facility in February 2023 but left shortly thereafter. The circuit court revoked J.R.'s improvement period in April 2023 and terminated her parental rights to X.R. and T.R. in May 2023.

In September 2023, the DHS filed a second amended petition in which it alleged that a blood test had confirmed that the petitioner was the father of X.R.[4] The DHS restated the allegations against the petitioner from the amended petition and added the following allegation in paragraph 4.s. of the second amended petition: "[The petitioner] had inappropriate housing during the time of the events in the petition and had no way to care for or provide a stable living environment for [X.R.] . . . ." The DHS went on to allege that "[s]ince paternity was established, [the petitioner] has cooperated with [the DHS], has engaged in visits with [X.R.], and is working [with] services towards addressing his housing issues . . . ." During a hearing in September 2023, the petitioner stipulated to the allegation contained in paragraph 4.s. of the second amended petition, quoted above. The circuit court adjudicated the petitioner as an abusing parent and granted him a six-month improvement period.

The petitioner underwent a psychological evaluation in October 2023. The evaluator reached a "highly guarded" conclusion that the petitioner could not reliably attain

_____

[4] The DHS alleged that the petitioner was father to three other children, who lived with their biological mother. The DHS named those children and their mother as nominal parties to the second amended petition. Those children are not at issue in this appeal.

3

minimally adequate parenting due to the "lack of an established bond with [X.R.], history of polysubstance abuse and dependence, unemployment, and defensive responding in the current evaluation." Nevertheless, during a December 2023, hearing, the DHS recommended that visitation between the petitioner and X.R. occur at the petitioner's residence. The circuit court entered an order in February 2024 providing for such visitation and directing service providers to facilitate transportation for X.R. to attend the visits.

H.R. moved to intervene in the case in January 2024. H.R. stated that she and her daughters had "cared for [X.R.] from the day she came home from the hospital." According to H.R., X.R. had been in her care "ever since," and she and her daughters were "the only constant [X.R.] has ever known." H.R. acknowledged that X.R. "deserves to have a relationship with" the petitioner but relayed that she felt "that [X.R.] will be devastated if she is completely taken away from us." In the motion to intervene, H.R. also asked the circuit court to "grant [her] shared custody of" X.R.

At a review hearing in May 2024, the DHS reported that the petitioner "should successfully complete his Period of Improvement as of June 5, 2024." The DHS recommended that the petitioner receive a three-month period of follow-up services, including "'pop-ins' and random supervision." The DHS also recommended that H.R. be deemed X.R.'s psychological parent and given parenting time. The circuit court adopted both recommendations by order entered on May 23, 2024.

4

The guardian ad litem submitted a report to the circuit court on June 17, 2024. The guardian ad litem recommended that H.R. have parenting time during the second week of each month and the fourth weekend during the summertime, and the second and fourth weekend of each month during the school year. The guardian ad litem also recommended a shared holiday schedule. The court conducted a review hearing on June 18, 2024. In an order entered following the hearing, the court held the proposed parenting plan in abeyance to allow further discussion by the multidisciplinary team. The circuit court also "recommend[ed] more transition time in the Parenting Plan before the Parenting Plan is approved."[5] The court set the matter for a review hearing on August 28, 2024.

The guardian ad litem filed an updated report with the circuit court on August 15, 2024. There, the guardian ad litem detailed a lengthy meeting with X.R. held the day before. According to the guardian ad litem, X.R. stated that she lived with "Mom," referring to H.R., and H.R.'s daughters. X.R. reported to the guardian ad litem that J.R., whose parental rights had been terminated in May 2023, was present when she (X.R.) visited the petitioner, and that the petitioner told "her that [H.R.] took her away from her real mom and that she is going to get another mom." According to the guardian ad litem, X.R. disclosed that she sleeps in her own bedroom when at H.R.'s home and on the sofa with the petitioner when at his home. The child reported that she played at H.R.'s home

_____

[5] The circuit court entered an "Amended Order Review" on August 30, 2024, in which it noted the presence of H.R. at the June 18, 2024, hearing.

5

and watched television at the petitioner's home. The guardian ad litem also reported tension between H.R. and the petitioner.

The guardian ad litem then presented to the court a revised, recommended parenting plan. Under this revised plan, H.R. would have parenting time with X.R. during the school year from Monday afternoon until Thursday or Friday afternoons,[6] and the petitioner would have parenting time, otherwise. The guardian ad litem recommended the same schedule for the summertime, with allowances to permit H.R. and the petitioner each to take X.R. on vacations. The guardian ad litem recommended that X.R. attend the school nearest H.R.'s home, given that H.R. would be allocated more week-day parenting time. The guardian ad litem opined that the revised, recommended plan was "in [X.R.]'s best interest to continue to bond with [the petitioner] and also to continue to have equal time with her psychological mother." All told, the parenting plan allocated roughly fifty-fifty custody of X.R. between the petitioner and H.R.

The Court conducted a review hearing on August 28, 2024. At the commencement of the hearing, the petitioner's counsel stated the following:

> The guardian ad litem, in her report, has a parenting plan that's a 50/50 schedule between [the petitioner] and [H.R.], and I'm not sure of [H.R.'s] position. [The petitioner] would object to that plan, and he would object simply because of being the biological parent, and then we have a psychological parent. He would like more than 50/50, and he proposes a 60/40 arrangement, or even the guardian ad litem's – had initially

---

[6] H.R.'s parenting time was to end on Thursday afternoon or Friday afternoon, alternating weekly.

filed a report in June that was a parenting plan. We would ask the Court to adopt that if – in the alternative to our 60/40 proposal . . . .

The petitioner's counsel examined Ms. Sasha Gibbs, the Child Protective Services case worker. Ms. Gibbs testified that she had received no complaints about the petitioner from the service providers who assisted him with visitation. Ms. Gibbs went on to testify that she believed the parenting plan proposed by the guardian ad litem most recently was in X.R.'s best interest. Ms. Gibbs acknowledged that she had not objected to the parenting plan originally proposed by the guardian ad litem but that since then, "[t]here's been a lot more that's happened. I've experienced some videos, listened to conversations between – on – from phone conversations between [H.R.] and [X.R.]. I've watched them. I've talked to her myself."

At the close of the hearing, the guardian ad litem argued in support of the revised, proposed parenting plan.[7] The petitioner's counsel conceded that the petitioner "underst[oo]d that [X.R.] should have time with [H.R.], and not just an auxiliary amount of time, but legitimate time for her to continue bonding." He then reiterated his argument that the plan was not constitutionally "proper," questioning "at what point" is a

---

[7] The petitioner's counsel also stated that the petitioner "had a [f]amily [c]ourt case pending at the time this abuse-and-neglect petition was filed, so he was actively pursuing his rights to the child even prior to this case. He wasn't just a deadbeat dad, and then now, all of a sudden, he gets served with an abuse-and-neglect case . . . ."

"psychological parent . . . vested with more rights than the biological parent?" The circuit court went on to rule as follows:

> Okay. Having considered everything here, I really think that the best interest of the child is what I need to consider, and I think that the proposal offered by the guardian ad litem for 50/50 makes the most sense for [X.R.]
>
> I appreciate the fact that [the petitioner] has stepped up and become the dad that he needs to be for this child, and I appreciate the psychological parent, [H.R.], for taking care of her all this time. So I am going to approve the parenting plan that was proposed by our guardian ad litem.

The court entered the "Order Regarding Parenting Plan for [X.R.]" on August 28, 2024 ("the Parenting Plan Order"). In addition to the allocation of parenting time described above, the order specified that the petitioner and H.R. "shall share all decision making for [X.R.], including the major decisions such as education, religion, medical, extracurricular activities, discipline, etc." On September 16, 2024, the court entered an order, entitled "Order Review / Dismissal," in which it stated that permanency had been achieved for X.R. and ordered that the matter be dismissed and stricken from its docket ("the Dismissal Order"). The petitioner appeals those orders.

## II. STANDARD OF REVIEW

We review the circuit court's orders under the following standard:

> "When this Court reviews challenges to the findings and conclusions of the circuit court, a two-prong deferential standard of review is applied. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings

8

under a clearly erroneous standard." Syl., *McCormick v. Allstate Ins. Co.*, 197 W.Va. 415, 475 S.E.2d 507 (1996).

Syl. Pt. 1, *In re S.W.*, 236 W. Va. 309, 779 S.E.2d 577 (2015). Further,

"'[t]he exercise of discretion by a trial court in awarding custody of a minor child will not be disturbed on appeal unless that discretion has been abused; however, where the trial court's ruling does not reflect a discretionary decision but is based upon an erroneous application of the law and is clearly wrong, the ruling will be reversed on appeal.' Syllabus point 2, *Funkhouser v. Funkhouser*, 158 W.Va. 964, 216 S.E.2d 570 (1975), *superseded by statute on other grounds as stated in David M. v. Margaret M.*, 182 W.Va. 57, 385 S.E.2d 912 (1989)." Syl. Pt. 1, *In re Abbigail Faye B.*, 222 W.Va. 466, 665 S.E.2d 300 (2008).

Syl. Pt. 2, *In re Antonio R.A.*, 228 W. Va. 380, 719 S.E.2d 850 (2011). With those standards in mind, we turn to the parties' arguments.

## III. DISCUSSION

The petitioner challenges the Parenting Plan Order, in which the circuit ordered that he and H.R., X.R.'s psychological parent, share custody of X.R. equally, as well as decision-making authority. The petitioner "argues that it is a violation of a fundamental constitutional right to be required to equally share custody and decision-making responsibility with a person who is deemed a psychological parent." The petitioner asserts that he successfully completed a post-adjudicatory improvement period, X.R.'s overnight visits in his home were successful, and the parenting services providers did not submit negative reports to the DHS regarding visitation. The petitioner asks this Court to overturn the Parenting Plan Order and remand this matter with directions to the circuit

court to adjudge the petitioner as X.R.'s "primary custodial and decision-making parent . . . ."

The DHS responds that the circuit court properly found H.R. to be X.R.'s psychological parent and allowed H.R. to intervene to seek custody of X.R. The DHS argues that there are limited circumstances in which a psychological parent's preferences may trump those of a biological parent, and that this is such a case considering X.R.'s best interests. The DHS argues that the Parenting Plan Order does not violate the petitioner's right to the care, custody, and control of X.R. because the petitioner was adjudicated as an abusing parent and West Virginia Code § 49-4-604 "clearly contemplates limitations upon a parent's parental rights, even if they have successfully completed an improvement period." The guardian ad litem argues in support of the Parenting Plan Order, asserting that "it was in the child's best interests for H.R. and [the petitioner] to be granted 50/50 custody," and that the evidence adduced before the circuit court supports such an arrangement. H.R. likewise argues that the circuit court's order serves X.R.'s best interests.

**A.**

We begin our consideration of the parties' arguments by reviewing a parent's fundamental right to the care, custody, and control of his child. "The liberty interest at issue in this case—the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests . . . ." *Troxel v. Granville*, 530 U.S. 57, 65 (2000). This Court has held that,

> [i]n the law concerning custody of minor children, no
> rule is more firmly established than that the right of a natural

10

parent to the custody of his or her infant child is paramount to that of any other person; it is a fundamental personal liberty protected and guaranteed by the Due Process Clauses of the West Virginia and United States Constitutions.

Syl. Pt. 1, *In re Willis*, 157 W. Va. 225, 207 S.E.2d 129 (1973); *see also* Syl. Pt. 3, *Lindsie D.L. v. Richard W.S.*, 214 W. Va. 750, 591 S.E.2d 308 (2003) ("The Due Process Clauses of Article III, Section 10 of the Constitution of West Virginia and of the Fourteenth Amendment of the Constitution of the United States protect the fundamental right of parents to make decisions concerning the care, custody, and control of their children.").

Yet, a parent's rights are not absolute:

[a] parent has the natural right to the custody of his or her infant child and, *unless the parent is an unfit person because of misconduct, neglect, immorality, abandonment or other dereliction of duty, or has waived such right, or by agreement or otherwise has transferred, relinquished or surrendered such custody*, the right of the parent to the custody of his or her infant child will be recognized and enforced by the courts.

Syl., *Whiteman v. Robinson*, 145 W. Va. 685, 116 S.E.2d 691 (1960) (emphasis added); *see also In re Antonio R.A.*, 228 W. Va. at 388, 719 S.E.2d at 858 (stating that "a parent's natural right to the custody of his or her child is limited in cases in which the parent is found to be abusive, neglectful, or otherwise unfit"). Nevertheless, the child's best interests "will not be invoked to deprive an unoffending parent of his natural right to the custody of his child." *Hammack v. Wise*, 158 W. Va. 343, 347, 211 S.E.2d 118, 121 (1975).

"[S]triking a balance between a biological parent's constitutional rights and the child's best interests can be difficult . . . ." *In re Antonio R.A.*, 228 W. Va. at 389, 719

11

S.E.2d at 859. That is doubly so in matters involving the "psychological parent" concept,

which is an "equitable theory and judge-made construct . . . ." *In re K.H.*, 235 W. Va. 254,

262, 773 S.E.2d 20, 28 (2015). This Court defined a "psychological parent" in Syllabus

Point 3 of *In re Clifford K.* as,

> a person who, on a continuing day-to-day basis, through
> interaction, companionship, interplay, and mutuality, fulfills a
> child's psychological and physical needs for a parent and
> provides for the child's emotional and financial support. The
> psychological parent may be a biological, adoptive, or foster
> parent, or any other person. The resulting relationship between
> the psychological parent and the child must be of substantial,
> not temporary, duration and must have begun with the consent
> and encouragement of the child's legal parent or guardian. To
> the extent that this holding is inconsistent with our prior
> decision of *In the Interest of Brandon L.E.,* 183 W.Va. 113,
> 394 S.E.2d 515 (1990), that case is expressly modified.

*Id.*, 217 W. Va. 625, 619 S.E.2d 138 (2005). "[T]he limited rights of a psychological parent

cannot ordinarily trump those of a biological or adoptive parent to the care, control, and

custody of his/her child." *Id.* at 644, 619 S.E.2d at 157.[8] However, "under appropriate

circumstances," a psychological parent may have a "right to continued visitation with" the

child with whom he or she is bonded. *In re K.H.*, 235 W. Va. at 262, 773 S.E.2d at 28.

---

[8] In *In re Clifford K.*, we not only reversed the circuit court's order denying
a psychological parent's motion to intervene in a custody matter, but we also ordered that
permanent custody of the child be granted to the child's psychological parent. *In re Clifford
K.*, 217 W. Va. at 647–48, 619 S.E.2d at 160–61. The DHS suggests that this case presents
extraordinary circumstances, like those *In re Clifford K.*, that justify privileging H.R.'s
right as the psychological parent of X.R. In *In re Clifford K.*, however, the child's
biological mother was deceased and the biological father, Clifford K., did not seek custody
of his son; in fact, he, "acquiesce[d] in an award of custody to" the psychological parent.
*Id.* at 631 n.3, 619 S.E.2d at 144 n.3.

12

Importantly, the "child has a right to continued association with individuals with whom he has formed a close emotional bond, including foster parents, provided that a determination is made that such continued contact is in the best interests of the child." Syl. Pt. 11, *In re Jonathan G.*, 198 W. Va. 716, 482 S.E.2d 893 (1996); *see In re K.H.*, 235 W. Va. at 266, 773 S.E.2d at 32 (observing that "due to the grandmother's status as psychological parent to the child, the grandmother and the child are entitled to continued association with one another").

Still, "[a]s the Supreme Court stated in *Troxel,* there is 'a presumption that fit parents act in the best interest of their children.'" *In re Visitation of A.P.*, 231 W. Va. 38, 43–44, 743 S.E.2d 346, 351–52 (2013) (quoting *Troxel*, 530 U.S. at 69). Accordingly, courts may not "interven[e] in a fit parent's decision making on a best interests basis," solely. *Visitation of Cathy L.(R.)M. v. Mark Brent R.*, 217 W. Va. 319, 328, 617 S.E.2d 866, 875 (2005). More to the point, "a judicial determination regarding whether . . . visitation rights [for a third party] are appropriate," over a fit parent's objection "may not be premised solely on the best interests of the child analysis. [The court] must also consider and give significant weight to the parents' preference . . . ." *Id.* (citing *Troxel*, 530 U.S. at 69). Therefore, when faced with visitation and custody questions involving fit parents and nonparents, a court must "assess[] . . . the special circumstances of each case," and "accord special weight to the preferences of the parent," while maintaining the best interests of the child "as a critical component of the dialogue regarding visitation or custody." *In re K.H.*, 235 W. Va. at 265, 773 S.E.2d at 31.

13

**B.**

As discussed above, the petitioner argues that the Parenting Plan Order violates his fundamental right to the care, custody, and control of X.R. The DHS counters that the Parenting Plan Order does not violate the petitioner's right to the care, custody, and control of X.R. because the petitioner was adjudicated as an abusing parent and West Virginia Code § 49-4-604 "clearly contemplates limitations upon a parent's parental rights, even if they have successfully completed an improvement period." Additionally, the respondents contend that the Parenting Plan Order may be justified by X.R.'s best interests, alone.

Having reviewed the record, the parties' arguments, and relevant authority, we concur with the petitioner that the circuit court erred when it ordered that he, X.R.'s biological father, share decision-making and custody of X.R. equally with H.R., X.R.'s psychological parent. First, our law is clear: "the right of a natural parent to the custody of his or her infant child is paramount to that of any other person." *In re Willis*, 157 W. Va. at 237, 207 S.E.2d at 136. Here, at the close of this Chapter 49, abuse-and-neglect proceeding, the petitioner's parental rights remained intact. Neither the Parenting Plan Order nor the Dismissal Order references West Virginia Code § 49-4-604(c) (2020), the statute that sets forth a circuit court's decisional options at the dispositional phase of an abuse-and-neglect matter under Chapter 49 of the West Virginia Code. Clearly, though, the circuit court did not impose disposition pursuant to West Virginia Code § 49-4-604(c)(3) (return the child to his or her own home under the supervision of the

14

DHS); *id*. § 49-4-604(c)(4) (order terms of supervision calculated to assist the child and any abusing or battered parent which prescribe the manner of supervision and care of the child); *id*. § 49-4-604(c)(5) (temporary guardianship); or § 49-4-604(c)(6) (termination of parental rights). Therefore, we conclude that the circuit court imposed disposition in a manner akin to § 49-4-604(c)(1) (dismissal of the petition) or § 49-4-604(c)(2) (referral to a community agency for assistance and dismissal of the petition) and so left the petitioner's parental rights fully intact.

Consequently, as the circuit court did not limit or terminate the petitioner's parental rights pursuant to § 49-4-604(c)(3)–(6), the petitioner retained "the natural right to the custody of his or her infant child," X.R., "*unless [he was] an unfit person . . . .*" *Whiteman*, 145 W. Va. at 696, 116 S.E.2d at 696, Syl., in part (emphasis added). The respondents appear to argue that the petitioner was an unfit person in August 2024, when the circuit court entered the Parenting Plan Order, because the petitioner was adjudicated as an abusing parent in September 2023.[9] However, that position is flawed considering the

---

[9] Respondents contend that the petitioner exposed X.R. to J.R. after J.R.'s parental rights were terminated in 2023 and attempted to undermine H.R.'s relationship with X.R. in other ways following the completion of the post-adjudicatory improvement period. According to the DHS, such action by the petitioner supports "balanc[ing] his custodial and decision-making responsibilities with Aunt H.R." The DHS's argument overlooks two points. First, while the guardian ad litem reported these alleged actions of the petitioner to the circuit court, no findings were made regarding this purported conduct. Second, the circuit court stated during the August 28, 2024, hearing that it "appreciated the fact that [the petitioner] has stepped up and *become the dad he needs to be* for" X.R., despite the information imparted by the guardian ad litem. (Emphasis added).

petitioner's successful completion of a post-adjudicatory improvement period in June 2024.

"'[A]n improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the miscreant parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re J.D.-1*, 247 W. Va. 270, 279, 879 S.E.2d 629, 638 (2022) (quoting *In re Emily & Amos B.*, 208 W. Va. 325, 334, 540 S.E.2d 542, 551 (2000)). We have held that,

> "[a]t the conclusion of the improvement period, the court shall review the performance of the parents in attempting to attain the goals of the improvement period and shall, in the court's discretion, determine whether the conditions of the improvement period have been satisfied and whether sufficient improvement has been made in the context of all the circumstances of the case to justify the return of the child."

Syl. Pt. 2, *In re Jonathan Michael D.*, 194 W. Va. 20, 459 S.E.2d 131 (1995) (quoting Syl. Pt. 6, *In Interest of Carlita B.,* 185 W. Va. 613, 408 S.E.2d 365 (1991)). Nevertheless, "[t]he assessment of the overall success of the improvement period lies within the discretion of the circuit court 'regardless of whether or not the individual has completed all suggestions or goals set forth in family case plans.'" *Id*. at 27, 459 S.E.2d at 138 (quoting *In Interest of Carlita B.*, 185 W. Va. at 626, 408 S.E.2d at 378).

As all acknowledge, the petitioner successfully completed his improvement period in June 2024, demonstrating that the petitioner had—by that time—corrected the condition of abuse for which he was adjudicated: "inappropriate housing during the time of the events in the petition and . . . no way to care for or provide a stable living environment

16

for [X.R.]." Neither the Parenting Plan Order nor the Dismissal Order contain findings to support the conclusion that, despite that success, the petitioner remained an abusing parent, i.e., an unfit parent, in August 2024. Neither order contains a finding that the petitioner had, for example, "fail[ed] to improve [his] overall attitude and approach to parenting." *In re Jonathan Michael D.*, 194 W. Va. at 27, 459 S.E.2d at 138 (internal quotations and alterations omitted). In fact, the circuit court stated during the August 28, 2024, hearing that the petitioner "has stepped up and *become the dad he needs to be* for" X.R. Therefore, in August 2024, the petitioner was not an "unfit person," and his right to the care, custody, and control of X.R. was then "paramount to that of any other person." *In re Willis*, 157 W. Va. at 237, 207 S.E.2d at 136.[10]

---

[10] The DHS suggests that this Court look to West Virginia Code §§ 48-9-206 (2022), 207 (2022), and 209 (2024) to affirm the Parenting Plan Order. With regard to those statutes, this Court has held that,

> [a] circuit court is obligated to apply the factors and considerations set forth in West Virginia Code §§ 48-9-206 (2018) and -207 (2001) in allocating custodial and decisionmaking responsibilities *when reunifying children subject to abuse and neglect proceedings with parents, guardians, or custodians who are no longer cohabitating at the close of the proceedings*. Where findings of abuse and/or neglect have been established, the circuit court must further employ the mandatory considerations and procedures set forth in West Virginia Code § 48-9-209 (2016), in order to protect the children from further abuse and/or neglect.

Syl. Pt. 5, *In re T.M.*, 242 W. Va. 268, 835 S.E.2d 132 (2019) (emphasis added).

Here, the issue before the circuit court at the end of this abuse-and-neglect proceeding was *not* the reunification of X.R. with "parents, guardians, or custodians who

17

The DHS argues that a circuit court "may limit the rights of a parent who has successfully completed an improvement period," and cites to *In re B.H.* for support. *Id.*, 233 W. Va. 57, 754 S.E.2d 743 (2014). In that case, we held that, "[i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." *Id.* at 237, 754 S.E.2d at 743, Syl. Pt. 4. We affirm that principle but do not agree with the DHS that it supports the Parenting Plan Order. First, we reiterate that the circuit court did not impose disposition in this matter pursuant to West Virginia Code § 49-4-604(c)(3), (4), (5), or (6)—dispositional options that limit or terminate some or all parental rights. Second, the facts of *In re B.H.* are highly distinguishable. In that case, the petitioner-mother was adjudicated as neglectful for, among other things, exposing her children to sex offenders, resulting in the sexual abuse of the children. *Id.* at 61, 754 S.E.2d at 747. The petitioner-mother was granted an improvement period. *Id.* "While the mother complied with certain aspects of her improvement period, in other areas she experienced difficulties," such as "knowingly . . . dating and living with another sex offender . . . ." *Id.* At disposition, the circuit court initially terminated the petitioner-mother's parental rights;

---

are no longer cohabitating at the close of the proceedings," *id.*, so our analysis does not extend to those statutes. *See also id.* at 276 n.11, 835 S.E.2d at 140 n.11 (noting that the Court's "holding and analysis" in *In re T.M.* were "limit[ed] . . . to the specific issue of the governance of Chapter 48 custodial provisions *where parents have sought judicial allocation of custody through divorce proceedings, but the family court has lost jurisdiction to make those determinations due to the pendency of abuse and neglect proceedings*") (emphasis added).

however, the court then entered a "Corrected Disposition Order" in which it stated that the petitioner-mother had "'substantially complied'" with the terms of the improvement period. *Id*. at 63, 754 S.E.2d at 749. The court granted primary custody of the children to their non-offending father, with liberal visitation for the petitioner-mother. *Id*.[11]

On appeal, we affirmed the circuit court's order because "although the mother substantially complied with the terms and conditions of her improvement period, there were continuing concerns that she would again become involved with inappropriate individuals and thereby continue to expose her daughters to the serious risks attendant with such ill-advised associations." *Id*. at 66, 754 S.E.2d at 752. We went on to explain that,

> [u]nlike an abuse and neglect proceeding that involves a dirty home or a parent abusing drugs, where a parent's success in an improvement period can be measured in concrete terms of whether the home is clean or the parent's drug screens are negative, here, the circuit court had to assess whether the mother had internalized what the service providers endeavored to teach her during her improvement period and whether she would, in fact, protect her children by avoiding relationships with individuals in whose presence her children were placed at risk of abuse.

*Id*.

In contrast to the mother-petitioner in *In re B.H.*, the petitioner in this case successfully completed his improvement period with no qualification apparent from the

---

[11] *In re B.H.* is also distinguishable, factually, because that case involved custodial allocation between two parents, both with parental rights fully intact. It did not involve an award of custody to a psychological parent in derogation of the fit natural parent's rights.

19

record in this case. Ms. Gibbs, the CPS worker, testified during the August 28, 2024, hearing that she did not receive negative reports about the petitioner's parenting abilities from the service providers tasked with facilitating visitation between the petitioner and X.R., and the circuit court placed X.R. in the petitioner's custody without supervision. Moreover, the type of neglect for which the petitioner was adjudged—"inappropriate housing during the time of the events in the petition and . . . no way to care for or provide a stable living environment for" X.R.—differs vastly from the less "concrete" question faced by the circuit court in *In re B.H.*: whether the petitioner-mother "had internalized what the service providers endeavored to teach her and whether she would, in fact, protect her children by avoiding relationships with" sex offenders. *Id.* For all these reasons, *In re B.H.* cannot justify the custody and decision-making terms of the Parenting Plan Order.

In sum, when the circuit court entered the Parenting Plan Order in August 2024, (1) the petitioner's parental rights remained intact, and (2) the petitioner was no longer an unfit parent. Therefore, the petitioner's fundamental right to the care, custody, and control of X.R. was then "paramount to that of any other person." *In re Willis*, 157 W. Va. at 237, 207 S.E.2d at 136. Consequently, the circuit court erred when it granted H.R. decision-making authority and custody as to X.R. equal to that which it granted the petitioner based *solely* on a finding that such an arrangement was in X.R.'s best interests.[12] *See In re Visitation of A.P.*, 231 W. Va. at 43, 743 S.E.2d at 351 (stating that "[t]he

---

[12] Consequently, the Dismissal Order must be vacated.

20

mandates of *Troxel* require that the wishes of the petitioner, as a fit parent presumed capable of rational choices concerning the relationships to be enjoyed by her child, be accorded special weight"). Therefore, we reverse that portion of the Parenting Plan Order.

## C.

There are rights at stake in this appeal *other* than the petitioner's fundamental right to the care, custody, and control of X.R. Again, a "child has a right to continued association with individuals with whom he has formed a close emotional bond, including foster parents, provided that a determination is made that such continued contact is in the best interests of the child." *In re Jonathan G.*, 198 W. Va. at 736, 482 S.E.2d at 913, Syl. Pt. 11. There is no dispute that X.R. and H.R. share a close emotional bond, and that continued association with H.R. is in X.R.'s best interests. *See In re K.H.*, 235 W. Va. at 266, 773 S.E.2d at 32 (observing that "due to the grandmother's status as psychological parent to the child, the grandmother and the child are entitled to continued association with one another"). Therefore, we vacate the remainder of the Parenting Plan Order and remand this case to the circuit court with directions to enter an order determining the scope of X.R. and H.R.'s continued association, consistent with this opinion.[13] To reach that determination on remand, the court must assess the special circumstances of this case, accord special weight to the preferences of the petitioner, and consider X.R.'s best interests. *See id*. at 265, 773 S.E.2d at 31 (affirming grant of custody to biological father but

---

[13] The circuit court should also consider the emotional bond formed by X.R. with H.R.'s daughters, whether that bond supports continued association between X.R. and H.R.'s daughters, and, if so, the scope of that continued association.

21

remanding for entry of an order "specifying a liberal visitation schedule" between grandmother and child due to grandmother's status as child's psychological parent). The circuit court may expeditiously conduct any proceedings on remand necessary to assist in that determination, including, but not limited to holding an additional hearing(s).

## IV. Conclusion

For the reasons discussed above, we vacate the Dismissal Order, reverse-in-part and vacate-in-part the Parenting Plan Order and remand this case for further proceedings as specified herein. The Clerk is directed to issue the mandate contemporaneously with this Opinion.

Reversed, in part; vacated, in part; and remanded with directions.